1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL D. BOOTH,

                    Petitioner,

       v.

DOUG WADDINGTON,

                    Respondent.

Case No.  C04-5460RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**November 11ᵗʰ 2005**

        This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4. Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Dkt. # 1).  Respondent has filed an answer alleging that while the petition is unexhausted it also fails to state a claim for which relief can be granted.  (Dkt. # 10).  The time for filing a traverse has past and this matter is now ripe for review.  Having reviewed the file the court recommends **DISMISSAL WITH PREJUDICE**.

        Petitioner is in state custody pursuant to a 2002 Peirce County conviction for manufacture of a controlled substance.

FACTUAL BACKGROUND

        The state court of appeals summarized the facts of this case as follows:

In the early afternoon of March 31, 2001, Booth's neighbor, Arthur Rohlik, reported a thick, caustic smoke coming from Booth's fenced, gated, and posted undeveloped property. Rohlik was concerned about the fire because he had seen people enter the property, and he suspected someone might be manufacturing methamphetamine.

In response to Rohlik's report, Deputy Sheriff James Jones of the Pierce County Sheriff's Department entered Booth's property and discovered Booth and Carl Marx in the midst of manufacturing methamphetamine next to the open fire that was producing the smoke. The State charged Booth with one count of unlawful manufacture of a controlled substance.

Prior to trial, Booth moved to suppress the evidence, arguing that Jones's warrantless entry onto his property was illegal. The State responded that Jones's entry was reasonable due to exigent circumstances or under the emergency exception to the warrant requirement.

After hearing testimony from Rohlik and Jones, the trial court entered the following findings of fact:

I

At approximately 1:30 pm on March 31, 2001, Arthur A. Rohlik called 911 because a heavy, white, choking smoke was drifting onto his property, and towards his home. Mr. Rohlik reported that the smoke had a smell of burned plastic and chemicals, and he was afraid a clandestine methamphetamine lab might be operating on the adjacent property. While it was apparent that the smoke was coming from the property adjacent to Rohlik's property, the fire was not visible.

II

Pierce County Sheriff's Deputy Jones, who was on routine patrol, responded to the 911 call and contacted Mr. Rohlik at the end of his driveway, in the 1000 block of 295th Street East, at approximately 1:37 p.m. Mr. Rohlik's property shares a driveway with the adjacent property. The gate was tied with a bungy [sic] cord. To reach the adjacent property a person must drive down the shared driveway, and then take a right turn onto the driveway of the adjacent property. There was a chain link fence and a no trespassing sign at the entrance to the adjacent property. The deputy was aware that the adjacent property was undeveloped.

III

Deputy Jones could smell plastic burning and knew that burning plastic or garbage is a crime. Because the property was not developed, there was no phone on the property and, therefore, no way to contact the owner of the property. Because the fire could not be seen from the driveway, there was no way to know if the fire was contained or out of control; there was no way to determine if the person who set the fire was still present; nor a means to determine if it was arson. While Mr. Rohlik saw two persons enter the property, there was no reason to believe that the property owner was the person who had started the fire. It is not unusual for persons to trespass onto undeveloped property to illegally manufacture methamphetamine.

IV

The deputy entered the property because he 1) was responding to a citizen complaint of acrid chemical smelling smoke entering onto the neighbor's property, 2)

knew there was illegal burning occurring on the property, 3) did not know if it was under control, 4) did not know if it was an arson, 5) did not know who started it or if the owner was aware it was happening, 6) believed there may be trespassers on the property, 7) had no other way of contacting the owner of the property.

V

Obtaining a search warrant would have been impractical because it would have taken between three and six hours.

VI

Deputy Jones went down the shared driveway and entered the adjacent property on its driveway. The deputy walked up the hill on the driveway until he came to the area in which the fire was located. When he got to this part of the property the deputy observed an old ambulance, parked with its rear doors open. The deputy observed a fire in a firepit [sic] approximately 15 feet away from the passenger side of the ambulance. The deputy continued to approach and when he was about 10 feet from the ambulance he smelled a very strong odor of ammonia. The amount of ammonia in the air made it difficult for the deputy to breath.

VII

The deputy observed two persons, including the defendant, near the back of the ambulance. The defendant was pouring what appeared to be anhydrous ammonia into a one gallon thermos cooler container. The defendant was wearing thick leather gloves and stirring the contents while he poured the liquid. The other person, [C]arl Marx, was stooped over the mixture while the defendant poured and stirred.

VIII

The deputy ordered the pair to stop what they were doing. When told to step forward, the defendant kicked backwards, knocking over the thermos container. When he did this there was a strong smell of ammonia. The deputy took both men into custody.

IX

Deputy Jones has been with the Pierce County Sheriff's Department for 19 years, and has extensive experience investigating the crime of methamphetamine manufacturing. Deputy Jones had uncovered approximately 25-30 methamphetamine labs in the previous year, and had made more than 250 methamphetamine related arrests over the last few years.

X

What the deputy observed was consistent with the second stage of the "Nazi" method of manufacturing methamphetamine.

XI

The testimony of the deputy was credible. The testimony of Mr. Rohlik was credible.

Clerk's Papers (CP) at 66-69. Based on these findings, the trial court denied the

REPORT AND RECOMMENDATION
Page - 3

motion, concluding that (1) exigent circumstances justified Jones's entry to investigate the illegal burning (conclusion of law II); and (2) Jones was also justified in entering the property under the "community caretaking function," to ensure that the fire did not spread, to "look into the source of a nuisance," and to "[l]imit[] the damage of an illegal fire" (conclusion of law III). CP at 71.

Booth waived his right to a jury trial, and the trial court found him guilty as charged. . . .

(Dkt. # 10 citing Dkt. # 11 exhibit 1 pages 1 to 4).

## PROCEDURAL HISTORY

The trial court found petitioner guilty as charged and sentenced him to 72 ½ months imprisonment.  (Dkt. # 1, page1).  The petitioner appealed and he only raised issues relating to search and seizure.  (Dkt. # 1, page 1).  The state court of appeals affirmed the conviction.  (Dkt. # 11, exhibit 2).

Petitioner filed a motion for discretionary review with the state supreme court and presented the following issues:

1.    DID THE TRIAL COURT ERROR [sic] IN DENYING MOTION TO SUPRESS [sic]?

2.    THE COURT OF APPEALS IMPROPERLY AFFIRMED THE TRIAL COURTS FINDINGS OF FACT AND CONCLUSION OF LAW.

3.    THE OBSERVATIONS MADE BY DEPUTY JONES WERE MADE IN THE COURSE OF AN UNLAWFUL SEARCH.

(Dkt. # 11, exhibit 2, page 1).

Review was denied on March 2nd, 2004.  (Dkt. # 11 exhibit 3).  Petitioner filed the petition now before the court and the only ground raised is a search and seizure, suppression of evidence, question.  (Dkt. # 1 pages 1 to 6).

## DISCUSSION

1.    EXHAUSTION AND SEARCH AND SEIZURE.

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  No claim in this petition appears to have been presented to the states highest court as a federal claim.  See exhibits (Dkt. # 11 and 12).  A federal

1   habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of

2   prisoners' federal rights.  Duncan v. Henry,  --- U.S. ---, 115 S.Ct. 887, 888 (1995).  It is not enough

3   that all the facts necessary to support the federal claim were before the state courts or that a

4   somewhat similar state law claim was made.  Id, *citing* Picard v. Connor, 404 U.S. 270 (1971) and

5   Anderson v. Harless, 459 U.S. 4 (1982).  The claim appears to be unexhausted.

6        Normally, this would mean the court dismisses the petition without prejudice.  If a court can

7   deny an entire petition on the merits, exhaustion is not required.  Here the only issue raised is a

8   question relating to search and seizure and suppression of evidence.

9        In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court  recognized that the

10  exclusionary rule is not part of the United States Constitution.  The exclusionary rule is a judicially

11  created tool used to protect a person's Fourth Amendment right against unreasonable searches.  The

12  rule prohibits the introduction of evidence obtained in violation of the Fourth Amendment right

13  against unreasonable search and seizure.

14       In Stone v. Powell the Supreme Court held the application of the rule in a federal habeas

15  corpus proceeding does little to protect the Fourth Amendment Right and costs society too much.

16  Therefore, when a person has had a full and fair opportunity to litigate their Fourth Amendment

17  claim in state court the federal courts will not consider the issue in habeas.  Stone v. Powell, 428

18  U.S. at 489-490.

19       Here, petitioner raised this issue at every step of his conviction, his direct appeal, and his

20  motion for discretionary review.  Application of the rule announced in Stone v. Powell  prevents this

21  court from hearing this petition.  Accordingly, the petition must be **DISMISSED.**

22                                                CONCLUSION

23       Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH**

24  **PREJUDICE.**  A proposed order accompanies this report and recommendation.

25       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

26  parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

27  R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

28

1    appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

2    72(b), the clerk is directed to set the matter for consideration on **November 11th 2005**, as noted in

3    the caption.

4

5

6           Dated this 25th day of October, 2005.

7

8

9

10                                  Karen L. Strombom

11                                  United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28